UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

ADE BROWN,

        Plaintiff,                  Case No. 1:18-cv-1147

v.                                          Honorable Gordon J. Quist

W. SMITH et al,

        Defendants.
_____/

## OPINION

        This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Tony Trierweiler, Marshaun Robinson, and Mitch Vroman.

## Discussion

        I.        Factual Allegations

        Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Ionia Correctional Facility (ICF) in Ionia, Michigan. The events about which he

complains, however, occurred at the Bellamy Creek Correctional Facility (IBC) also in Ionia, Michigan. Plaintiff sues the following IBC officials: Warden Tony Trierweiler; Grievance Coordinator Marshaun Robinson; Residential Unit Manager Mitch Vroman; Nurse Joan Alfrey; and Sergeant W. Smith.

Plaintiff alleges that, on November 2, 2015, between 3:00 and 3:30 p.m., while he was in his administrative segregation cell, he and another inmate were "fishing." Plaintiff explains: "Fishing is when you take a string and attach it to a card, and shoot the card under the door to [another] person's cell[]." (Compl., ECF No. 1, PageID.4.) Sergeant Smith caught Plaintiff fishing and demanded the card. Plaintiff refused and invited Smith to write a disobeying-a-direct-order ticket, a Class II misconduct. Smith again demanded the card. Plaintiff again refused. Smith then opened Plaintiff's door slot, punched Plaintiff in the penis, and grabbed Plaintiff's penis. Plaintiff fell to the ground screaming in pain. Plaintiff informed Smith that Plaintiff intended to write a grievance against Smith. Smith responded by stating: "if you write a grievance on me, I will write a fake ticket on you and get your ass rode out to Level V." (*Id.*) Smith walked off.

Either Smith or a lieutenant sent Defendant Alfrey to Plaintiff's cell to examine Plaintiff. Nurse Alfrey examined Plaintiff. Plaintiff claims Alfrey prescribed ice, pain pills, and cream to alleviate Plaintiff's pain. Alfrey, however, did not provide any of the prescribed treatments. Plaintiff alleges that he was in pain for weeks after the incident.

Both Smith and Plaintiff followed through on their threats. Smith filed a Class I misconduct against Plaintiff for assault and battery. Smith's report states:

> I opened the food slot and told Brown to give me the contraband. Brown stated: "Why?" I repeated my order as Brown was rolling up the string on to the paper and placed it into my right hand. As I was pulling my hand back, Prisoner Brown pulled

2

>the rolled-up paper & string from me, striking my hand, and yelled "write the ticket."

(Misconduct Report, ECF No. 1-1, PageID.14.) Smith's report was written immediately after the event, before Plaintiff filed his grievance. Two days later, Hearing Officer S. Burke found Plaintiff guilty of the offense and imposed a punishment of 10 days detention and 30 days loss of privileges. (Class I Misconduct H'rg Report, ECF No. 1, PageID.15.)

Plaintiff filed his grievance the same day. His grievance reports that Smith came to Plaintiff's cell door, opened the slot, and hit Plaintiff in the genitals, assaulting Plaintiff physically and sexually. Plaintiff filed his grievance through the normal MDOC grievance process; however, because his grievance alleged Staff-on-Prisoner Sexual Misconduct, the matter was handled through the MDOC's PREA[1] Grievance process. MDOC Policy Directive 03.03.140 (eff. date 09/15/2015). On November 3, 2015, Defendant Robinson sent Plaintiff a memorandum indicating that his grievance had been forwarded to the Warden's office for review and suspending the normal grievance process until further notice. (Memorandum, ECF No. 1-1, PageID.16.) Plaintiff interpreted the memo as suspending Plaintiff's right to file grievances. That is not the case. The PREA grievance process, which is significantly more involved than the regular institutional grievance process, displaces the regular process for sexual misconduct allegations.

On November 19, 2015, Defendant Trierweiler sent a memorandum to Plaintiff detailing the results of the PREA investigation. Trierweiler reported that "the evidence produced in [the] investigation did not substantiate any work rule violations and [the] matter is now considered closed." (Memorandum, ECF No. 1-1, PageID.17.) Based on that memo, Defendant Robinson prepared a response to the administrative grievance. Robinson's response reported the results of the investigation and denied the grievance. (Step I Grievance Response, ECF No. 1-1,

---

[1] PREA is an acronym for the Prison Rape Elimination Act, 34 U.S.C. §§ 30301 *et seq.*

PageID.11.) Plaintiff, dissatisfied with the result, filed an appeal of the institutional grievance. Defendant Trierweiler responded that the PREA investigation closed the matter and that Plaintiff's further pursuit of the institutional grievance would result in his placement on modified access status for abusing the process. (Step II Response, ECF No. 1-1, PageID.13.) Plaintiff continued to pursue the grievance through Step III. As a result, Plaintiff alleges, Defendants Trierweiler, Robinson, and Vroman placed Plaintiff on modified access to the institutional grievance process.

Plaintiff contends that Defendant Smith used excessive force in violation of Plaintiff's Eighth Amendment rights, that Defendant Alfrey was deliberately indifferent to Plaintiff's serious medical needs in violation of Plaintiff's Eighth Amendment rights, and that Defendants Smith, Trierweiler, Robinson, and Vroman violated Plaintiff's First Amendment rights by retaliating against him for engaging in conduct protected by that amendment. Plaintiff also contends Defendants Trierweiler, Robinson, and Vroman violated Plaintiff's First Amendment right of access to the courts and Fourteenth Amendment right of due process when they suspended the grievance process and placed Plaintiff on modified access to the institutional grievance process. Plaintiff seeks compensatory and punitive damages totaling tens of thousands of dollars against the Defendants.

## II. Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory

4

statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### III. Eighth Amendment

Plaintiff's allegations suffice to state Eighth Amendment claims against Defendants Smith and Alfrey.

IV.     First Amendment Retaliation

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

**A.     Defendant Smith**

With respect to Defendant Smith, Plaintiff's allegedly protected conduct was his threat to grieve Smith for the assault. Defendant Smith's adverse action against Plaintiff, in turn, was Smith's threat to file a false misconduct against Plaintiff. Based on Plaintiff's allegations, Smith's threat to file a false misconduct was a direct response to Plaintiff's threat to file a grievance. If a threat to file a grievance is protected conduct and a threat to file a false misconduct is adverse action, Plaintiff has stated a First Amendment retaliation claim against Defendant Smith.

The Sixth Circuit Court of Appeals has not "determined conclusively whether merely threatening to file a grievance constitutes protected activity." *Pasley v. Conerly*, 345 F. App'x 981, 984 (6th Cir. 2009). Nonetheless, the court concluded that "[b]ecause Pasley's threatened grievance was arguably legitimate, his conduct was arguably protected by the First Amendment." *Id*. at 985. At this stage of the proceedings, therefore, the Court will accept Plaintiff's allegation as sufficient to show protected conduct.

6

The Sixth Circuit has been more definitive with respect to whether a threat to falsely report a misconduct constitutes adverse action. "[T]he mere potential threat of disciplinary sanctions is sufficiently adverse action to support a claim of retaliation." *Scott v. Churchill*, 377 F.3d 565, 572 (6th Cir. 2004). Accordingly, the Court concludes that Plaintiff's allegations suffice to state a First Amendment retaliation claim against Defendant Smith.

### B.   Defendants Trierweiler, Robinson, and Vroman

Plaintiff alleges that Defendant Robinson retaliated against Plaintiff for filing his grievance by suspending Plaintiff's right to file grievances. "'[A]n inmate has an undisputed First Amendment right to file grievances against prison officials on his own behalf.'" *Maben v. Thelen*, 887 F.3d 252, 264 (6th Cir. 2018) (quoting *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000)). Moreover, the suspension was certainly motivated by Plaintiff's grievance. The suspension, however, was not adverse action.

An action is sufficiently adverse to support a First Amendment retaliation claim "if it is capable of deterring a person of ordinary firmness from exercising his or her [First Amendment] right . . . ." *Thaddeus-X*, 175 F.3d at 398. The grievance process suspension here did not foreclose Plaintiff from pursuing other grievances. It did not even preclude him from pursuing the grievance at issue. It simply put the grievance on another track for resolution. Placing the grievance on the PREA track, as opposed to the institutional grievance track, would not deter a person of ordinary firmness from exercising the right to file grievances; therefore, Plaintiff has failed to state a First Amendment retaliation claim against Defendant Robinson based on the November 3, 2015, "suspension" notice.

Plaintiff's additional claim that Defendants Trierweiler, Robinson, and Vroman retaliated against Plaintiff for pursuing Step III of the institutional grievance process fares no better. That claim fails with respect to the first two elements.

The right to file grievances is protected only insofar as the grievances are not "frivolous." *Herron*, 203 F.3d at 415. "Abusive or manipulative use of a grievance system would not be protected conduct[.]" *King v. Zamiara*, 680 F.3d 686, 699 (6th Cir. 2012). Plaintiff's insistence on pursuing Step III of his institutional grievance after his complaint had been fully and finally resolved through the PREA grievance process is appropriately characterized as frivolous and abusive. Therefore, Plaintiff's conduct was not protected by the First Amendment. Moreover, Plaintiff's allegations fall short on the second element because the Sixth Circuit has concluded that placement on modified access to the grievance system is not adverse action. *Jackson v. Madery*, 158 F. App'x 656, 660 (6th Cir. 2005); *Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 446 (6th Cir. 2005); *Kennedy v. Tallio*, 20 F. App'x 469, 471 (6th Cir. 2001).

V.   First Amendment – Access to the Courts

Plaintiff also claims that Defendants Trierweiler, Robinson, and Vroman interfered with Plaintiff's access to the courts, presumably because their restriction of his grievance activity might preclude him from exhausting his administrative remedies. If Plaintiff had been improperly prevented from filing a grievance, his right of access to the courts to petition for redress of his grievances (i.e., by filing a lawsuit) would not be compromised by his inability to file institutional grievances. Therefore, Plaintiff would not be able to demonstrate the actual injury required for an access-to-the-courts claim. *See, e.g.*, *Lewis v. Casey*, 518 U.S. 343, 355 (1996) (requiring actual injury); *Bounds v. Smith*, 430 U.S. 817, 821-24 (1977). The exhaustion requirement only mandates exhaustion of *available* administrative remedies. *See* 42 U.S.C. § 1997e(a). If Plaintiff were

improperly denied access to the grievance process, the process would be rendered unavailable, and exhaustion would not be a prerequisite for initiation of a civil rights action. *See Ross v. Blake*, 136 S. Ct. 1850, 1858-59 (2016) (reiterating that, if the prisoner is barred from pursuing a remedy by policy or by the interference of officials, the grievance process is not available, and exhaustion is not required); *Kennedy v. Tallio,* 20 F. App'x 469, 470 (6th Cir. 2001). In light of the foregoing, the Court finds that Plaintiff fails to state a cognizable claim.

## VI. Due Process

Finally, Plaintiff contends that when Defendants Trierweiler, Robinson, and Vroman interfered with his ability to pursue grievances, they violated Plaintiff's right to due process under the Fourteenth Amendment. Plaintiff has no due process right to file a prison grievance. The courts repeatedly have held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy,* 30 F. App'x 568, 569-70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Because Plaintiff has no liberty interest in the grievance process, Defendants' conduct did not deprive him of due process.

**Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that, pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c), Defendants Trierweiler, Robinson, and Vroman will be dismissed because Plaintiff has failed to state a claim against them.

An order consistent with this opinion will be entered.

Dated: November 16, 2018                    /s/ Gordon J. Quist
                                           GORDON J. QUIST
                                           UNITED STATES DISTRICT JUDGE